IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NICHOLAS DEATON,<br>  Plaintiff,<br><br>v.<br><br>CHRISTOPHER FLIPPIN, in his individual and official capacities.<br><br>  Defendants. | Civil Action No.<br>_____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW the Plaintiff, NICHOLAS DEATON, by and through his attorneys, Dustin Townsend, Lance LoRusso, and Ken Davis, and for his complaint pursuant to 42 U.S.C. § 1983, as well as state law causes of action enumerated herein, against Defendant Christopher Flippin, states the following in support thereof:

## INTRODUCTION

This is a civil action under 42 U.S.C § 1983 seeking damages against Defendant Christopher Flippin (on occasion "Mr. Flippin" or "Defendant"), in his individual capacity, for committing acts, under color of law, with the intent and for the purpose of depriving the Plaintiff of the rights secured to him under the Constitution and laws of the United States. Plaintiff further asserts state statutory

1

and common law torts against Defendant in his individual capacity. Plaintiff seeks compensatory damages, punitive damages, declaratory relief, attorneys' fees, and costs for Defendant's unlawful actions.[1]

## JURISDICTION AND VENUE

1.      Plaintiff's federal claims arise under the First, Fourth, and Fourteenth Amendments to the United States Constitution, as made actionable by 42 U.S.C § 1983. Plaintiff's claims present federal questions over which this Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331 and 28 U.S.C § 1343(a).

2.      Plaintiff timely placed Defendants on notice of his state law claims under O.C.G.A. § 36-33-5, by mailing the required notices via statutory overnight delivery certified, to the parties, within the requisite period of time. Plaintiff placed Defendants on notice of his claims in compliance with the Official Code of Georgia. *Ante litem* notice was received by all individuals, entities, and relevant parties on or about March 18, 2025.

3.      Plaintiff has complied with all legal and other preconditions, conditions precedent, post-conditions, and conditions subsequent to properly filing this suit including any and all notice requirements and/or exhaustion of remedies.

---

[1] Plaintiff only sues Defendant Flippin in his official capacity in Count III, and seeks solely declaratory relief in that count as to the State of Georgia, not monetary damages due to sovereign immunity, though Plaintiff seeks attorney's fees and costs from the State because those are available despite sovereign immunity.

4. This Court is a proper venue as the acts giving rise to Plaintiff's claims occurred within this District.

## THE PARTIES

5. Plaintiff was, at all times relevant, a police officer employed by the Clayton County Police Department ("Police Department"). Plaintiff was not an employee of the Clayton County Sheriff's Department ("Sheriff's Department"); no Sheriff's Department staff or supervisor has any duty or ability to discipline, direct, or govern Plaintiff or his conduct as a officer of the Police Department

6. At the time Defendant retaliated against Plaintiff there was no traditional employment relationship (or quasi-employment relationship) between Plaintiff and Defendant nor was there an employment relationship between the Sheriff's Department and Plaintiff—at no time was Plaintiff speaking as an employee of Sheriff's Department.

7. Plaintiff was not paid by the Sheriff's Department; he did not deliver messages on behalf of the Sheriff's Department, and no one would mistake his speech with the views of the Sheriff's Department nor the speech of the Sheriff's Department. Plaintiff's Speech was his own speech, which did not in one way or another reflect on the Sheriff's Department.

8. Plaintiff resides in the Northern District of Georgia and is subject to the jurisdiction of this court.

9. Defendant Flippin is and was, at all times relevant, a Lieutenant in the Sheriff's Department; on information and belief, Defendant Flippin at the times relevant to this complaint was acting as a shift supervisor and reported directly to the Sheriff of Clayton County Levon Allen (the "Sheriff"). Defendant Flippin is a resident of Henry County, Georgia residing in the Northern District of Georgia. Once served with process, he is subject to the jurisdiction of this Court.

10. Defendant was acting under color of law at all times relevant to this action.

11. All Defendants were acting contrary to plainly established constitutional rights and any reasonable actor in the position of Defendants would have known that detaining or confining Plaintiff without probable cause would violate clearly established law and retaliating against a non-employee[2] with sufficient severity to chill a citizen of ordinary firmness from speaking violated clearly established law.

12. All Defendants were acting with not only callous indifference to those plainly established rights of plaintiff but acting with actual malice with the intention of doing Plaintiff harm and doing wrong.

*Facts Common to All Counts*

13. On March 23, 2024, Plaintiff was transporting a detained individual ("Inmate") to the Clayton County Adult Detention Center ("Jail").

---

[2] This is not a case that involves a state-actor in the position of an employer to the plaintiff and thus does not implicate any interests the Sheriff's Department may have in regulating its employees' speech.

4

14.     The Jail is managed by Sheriffs' Department; with regard to the Jail, and its administration, the Sheriff has final decision and policy making authority.

15.     Plaintiff soon learned that the Jail was not going to accept Inmate.

16.     Inmate, despite refusing medical attention, and having no obvious (or complained of injury) would not be accepted by the Jail until he was taken to a hospital and refused medical treatment at that hospital.

17.     Plaintiff was somewhat incredulous that the same was in fact the Jail's policy and inquired as to whether such was reasonable where there was no apparent injury to Inmate, Inmate was not complaining of any injury, Inmate expressed his preference to receive no medical treatment, *etc.*[3]

18.     Because the Jail refused to take custody of Inmate, Plaintiff requested a name of the person responsible for refusing custody of Inmate.

19.     Eventually Flippin entered the "sally port" where Plaintiff and Inmate had been interacting with the nurses.

20.     A verbal exchange followed between Flippin and Plaintiff in essence involved Plaintiff expressing his disappointment that the policy was so irrational, and then in exasperation stating "Guys, I just need the name of who's refusing . . . I don't need

---

[3] On information and belief, the Jail staff—two separate nurses—with whom Plaintiff was interacting reported to Flippin that Plaintiff was being disrespectful and that the content of his speech was offensive.

excuses." Thereafter, productive communication broke down, and in essence both Plaintiff and Defendant repeated questions demanding that the other respond.

21. Plaintiff referred to Mr. Flippin as "dude" on multiple occasions. Mr. Flippin corrected: "I am not 'dude'" . . . "Let me tell you something, I'm Lieutenant Flippin."

22. Mr. Flippin informs Plaintiff that "this attitude, it's gonna stop, sir." To which Plaintiff responds, "Dude, I do not work for you."

23. The exchange ends with both Plaintiff and Defendant speaking over one another with raised voices and Mr. Flippen asking the rhetorical question, "You don't care? Okay, you can stand by, sir."

24. Plaintiff demanded to be let out of the Jail multiple times and was told by Mr. Flippin again, "You can stand by." Flippin then walked out of the sally port trapping Plaintiff within the Jail. During which, Flippin orders Sheriff's Department personnel not to allow Plaintiff to depart.

25. Plaintiff had committed no crime and no reasonable actor in Defendant's position would have believed probable cause existed to believe a crime had been committed or to detain Plaintiff. Moreover, Defendant refused to take custody of Inmate, and Plaintiff attempted to leave while retaining custody of Inmate.

26. Multiple members of the Sheriff's Department physically blocked Plaintiff's path to a door out of the sally port, and the only other exit from the sally port was securely locked also on Defendant's order.

27.  Defendant, and agents taking orders from Defendant, detained Plaintiff, confining Plaintiff against his will in the sally port. Plaintiff remained in the room because he did not believe he was free to leave and was subject to the will of Defendant who had multiple armed deputies acting out his orders.

28.  Plaintiff perceived and reasonably believed that he was confined and was not free to leave. During which, Plaintiff had clearly expressed to Defendant that he wanted to exit and attempted to do so by pushing the exit button in the sally port.[4]

29.  Afterwards, Defendant re-entered sally port, accompanied by multiple deputies, and after another heated exchange, Plaintiff was escorted out of the building, together with inmate, by a multitude of armed deputies, who on information and belief had been ordered to appear, be armed, and to demonstrate force directed at Plaintiff.

30.  Plaintiff was in fear for his safety at this point, and believed that he would be shot by a deputy who appeared to be carrying a shotgun, loaded with "less-than-lethal rounds."[5]

31.  The above, and the detention itself, was done, on information and belief, solely to harm Plaintiff due to the protected speech of the Plaintiff, namely his verbal

---

[4] An exit button in a clearly visible location, for transmitting request for egress, is commonplace in sally port vicinities at a jail.
[5] Often, colored grips, stocks, or handguards are installed on firearms loaded with less-than-lethal munitions to allow for easy identification.

exchanges with Defendant that Defendant perceived as being inadequately respectful.

32. The above retaliatory action followed after the protected speech and was, on information and belief, caused by the contents and tenor of Plaintiffs speech.

33. Defendant Flippin specifically noted that he found Plaintiff's attitude distasteful and that he disapproved of Plaintiff's speech.

34. On information and belief, there was no probable cause, nor suspicion that Plaintiff committed a crime, and Plaintiff was solely seized due to the contents of his speech.

35. No reasonable actor in the position of Defendant would have found either the seizure reasonable, or the retaliation effected by the seizure, reasonable; both were clearly illegal.

36. On information and belief, immediately after ordering deputies to prevent Plaintiff from leaving, and to detain Plaintiff in locked sally port, Defendant contacted Sheriff and informed Sheriff that he had detained Plaintiff in sally port, explained that he had done so because of the content and tone of Plaintiff's speech, and the Sheriff explicitly approved of Defendant's conduct and ratified the same.

## COUNT ONE

### CLAIM FOR VIOLATION OF CIVIL RIGHTS THROUGH 42 U.S.C. § 1983 AS TO DEFENDANT FLIPPIN IN HIS INDIVIDUAL CAPACITY FOR UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT

37. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 36 of this complaint.

38. Defendant Flippin's detention of the Plaintiff, as described herein, was without either probable cause or reasonable suspicion of a criminal act.

39. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

40. Defendant Flippin, as a lieutenant of the Sheriff's Department, and Jail shift commander, was acting under the color of law at all relevant times herein.

41. Plaintiff had the clearly established right to be secure in his person from unreasonable seizures without due process, under the Fourth and Fourteenth Amendment of the United States Constitution.

42. Plaintiff was detained and confined.

43. Plaintiff perceived that he was confined.

44. On information and belief Defendant acted with the intent to confine Plaintiff.

45. Defendant knew or should have known of these clearly established constitutional rights at the time of the complained of conduct.

46. These actions of Defendant, as described herein, deprived Plaintiff of his constitutional rights under the Fourth and Fourteenth Amendment to the United States Constitution and caused Plaintiff damage.

47. Furthermore, the acts complained of were clearly violative of the rights of Plaintiff and any reasonable actor in Defendant's position would have known such.

48. As a direct result of Defendant's unlawful conduct, Plaintiff has suffered and incurred general and punitive damages in amounts to be determined at trial.

49. Plaintiff is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1983, pre-judgment interest and costs as allowable by Georgia and federal law.

## COUNT TWO

### STATE LAW CLAIM UNDER O.C.G.A. § 51-7-20 FOR FALSE IMPRISONMENT AND COMMON LAW FALSE IMPRISONMENT AS TO DEFENDANT FLIPPIN IN HIS INDIVIDUAL CAPACITY

50. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 36 and 38 through 47 of this complaint.

51.     O.C.G.A. § 51-7-20 codifies the intentional tort of False Imprisonment, which it defines in this way: "False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty."

52.     Defendant's detention of the Plaintiff, as described herein, was without either probable cause or reasonable suspicion of a criminal act.

53.     The discretionary acts of Defendant constitutes false imprisonment under state law and caused Plaintiff damage.

54.     Defendant's unlawful detention of the Plaintiff was a discretionary act conducted with actual malice—Defendant acted intentionally to cause Plaintiff harm knowing that his actions were wrong—and therefore not subject to official immunity.

55.     Defendant perceived himself as disrespected and for that reason purposefully inflicted harm on Plaintiff; he knew that his actions were both morally and legally wrong, and an abuse of his position.

56.     As a direct result of Defendant's unlawful conduct, Plaintiff has suffered and incurred general and punitive damages in amounts to be determined at trial.

## COUNT THREE

**CLAIM FOR VIOLATION OF CIVIL RIGHTS THROUGH 42 U.S.C. § 1983 FOR FIRST AMENDMENT RETALIATION AGAINST DEFENDANT FLIPPIN IN HIS INDIVIDUAL AND OFFICIAL CAPACITY.**

57.  Plaintiff realleges and incorporates herein by reference paragraphs 1 through 36, 38 through 47, and 52 through 55 of this complaint.

58.  Plaintiff at all times relevant to this Count had no employee-employer relationship with Defendant, or Sheriff's Department.

59.  Plaintiff undertook actions which are protected by the First Amendment, namely he spoke, asked questions, called Defendant "guy" and "dude," demonstrated what Defendant considered disrespect, and criticized policies (collectively "Protected Actions").

60.  Plaintiff undertook these Protected Actions while not in the employ of Defendant or Sheriff's office, and neither had an employer's interest in policing Plaintiff's speech

61.  Because of these Protected Actions, Defendant undertook a series of retaliatory acts aimed at chilling and punishing Plaintiff's speech, namely, the detention and seizure of Plaintiff, the physical shoving of Plaintiff, and the show of force directed towards Plaintiff (collectively "Explicit Retaliatory Acts & Tacit Threats").

62.  The Explicit Retaliatory Acts & Tacit Threats are of such significance and severity that they would stop a person of ordinary firmness, courage, and temerity from exercising their First Amendment rights. The Explicit Retaliatory Acts & Tacit

Threats have negatively affected Plaintiff both professionally, personally, and economically in a significant manner.

63. The Plaintiff's Protected Actions caused Defendants to undertake The Explicit Retaliatory Acts & Tacit Threats and those acts were aimed at chilling and punishing the exercise of First Amendment rights.

64. Defendant made Sheriff aware of The Explicit Retaliatory Acts & Tacit Threats and the Sheriff ratified the same conduct, explicitly approving of it, despite knowing that it was undertaken to punish speech of a non-employee.

65. Plaintiff intends to continue working as a Clayton County Police Officer,[6] and very likely will be in an almost identical situation on a regular basis—wherein he will need to speak with Jail staff—once his duties recommence after appeal.

66. Because Plaintiff will need to interact with staff including Mr. Flippin, and it is impossible to know when or if Plaintiff's speech will strike Defendant as offensive, or disrespectful,[7] there is a substantial likelihood of future irreparable harm in that Plaintiff will self-censor to avoid retribution absent a declaration that the behavior is clearly violative of the First Amendment.

---

[6] Plaintiff was erroneously disciplined, on information and belief at the behest of Sheriff's Department personnel, for the incident of March 23, 2024, and has appealed that discipline. Plaintiff will in all likelihood again be serving as an officer with the Police Department shortly and will be required to take inmates to the Jail and interact with Jail staff including Defendant.

[7] Many of the terms that Defendant found particularly offensive are colloquialisms often uttered mechanically and without thought such as "dude."

67. The above represents an actual controversy in which Plaintiff and Defendant have adverse interests.

68. Through the actions of Defendants Plaintiff has suffered damage for which Plaintiff seeks monetary and punitive damages against Defendant in his individual capacity and declaratory relief against Defendant in his official capacity.

## PRAYER FOR RELIEF

The Plaintiff respectfully request the following relief:

A. That all Defendant be served with a copy of the Summons and Complaint in this case;

B. That Defendant be required to timely answer the allegations and averments contained in the Complaint;

C. Declaratory judgement that Defendant's behavior clearly violate the First Amendment;

D. Compensatory damages against Defendants in an amount in excess of seventy-five thousand dollars ($75,000) to be determined at trial by jury upon all claims and matters for which a jury can be empaneled;

E. For an award of reasonable attorney's fees and costs expended pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1988, 28 U.S.C. §1920; and, O.C.G.A. §13-6-11;

F. Punitive damages against Defendants; and

G.    Award such other and further relief as this court deems just and proper.

This 14th day of May, 2025.

By:

*/s/Dustin Townsend*
Dustin Townsend
Georgia Bar No. 381622

*/s/Lance J. LoRusso*
Lance J. LoRusso
Georgia Bar No. 458023

*/s/ Ken Davis*
Ken Davis
Georgia Bar No. 705045
*Counsel for Plaintiff*

LoRusso Law Firm, P.C.
1827 Powers Ferry Road, S.E.
Atlanta, Georgia 30339
P: 770-644-2738 | F: 770-644-2379
dustin@lorussolawfirm.com
lance@lorussolawfirm.com
ken@lorussolawfirm.com